**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                      *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMESETTA DOSII,** | : | Civil Action No. |
| 242 Lafayette Avenue | : | |
| Collingdale, PA 19023 | : | |
|        Plaintiff, | : | |
| | : | |
|      v. | : | **Complaint and Jury Demand** |
| | : | |
| **ELWYN, INC.,** | : | |
| 5200 Chichester Avenue | : | |
| Aston, PA 19014 | : | |
| | : | |
| 111 Elwyn Road | : | |
| Elwyn, PA 19063 | : | |
|        Defendant. | : | |

**CIVIL ACTION**

Plaintiff, Jamesetta Dosii (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Elwyn, Inc. (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Pennsylvania Human Relations Act ("PHRA").  In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Elwyn, Inc. is a nonprofit human services

organization with a location at 5200 Chichester Avenue, Aston, PA 19014 and with a corporate headquarters located at 111 Elwyn Road, Elwyn, PA 19063.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII and the PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on November 11, 2024, alleging race and national origin discrimination as well as retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2025-01537 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated July 27, 2025.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is a Black female, and her national origin is Liberia.

21. On or about April 17, 2023, Defendant hired Plaintiff in the position of Life Skills Associate ("LSA").

22. Plaintiff was well qualified for her position and performed well.

### PLAINTIFF'S MANAGER HARASSED PLAINTIFF DUE TO HER RACE AND/OR NATIONAL ORIGIN

23. From the start of her employment, Charisse Matthews (African American), Operations Manager, made it clear that she did not like African employees, including Plaintiff and Aminata Bangura, LSA.

24. Matthews threatened to attempt to have several other African employees terminated from Defendant, by complaining to upper management about their work ethic, attitude and performance.

### PLAINTIFF'S MANAGER SPOKE POORLY ABOUT HER TO HER NEW LOCATION

25. On or about May 13, 2023, Defendant transferred Plaintiff from its Shavertown location to its Summit location and then short after to its Chichester location.

26. Matthews called Plaintiff's new Chichester location and spoke poorly about Plaintiff.

27. Matthews stated she did not like Plaintiff and planned to terminate her because she was transferred.

28. Matthews stated Plaintiff was "lazy" and "did not do her job."

### PLAINTIFF'S COWORKERS HARASSED HER

29. After Matthews' conduct, Plaintiff was harassed at the Chichester location.

30. Plaintiff's African American coworkers ignored Plaintiff and acted hostile towards her.

31. George Hage (biracial/African American), LSA, particularly harassed Plaintiff.

32. Hage took his shirt off in front of Plaintiff at Defendant.

33. Hage stated he "hated" Plaintiff.

34. Hage followed Plaintiff around.

### HAGE INSTRUCTED A CLIENT TO MAKE FALSE CLAIMS ABOUT PLAINTIFF

35. Hage told a client to call Plaintiff the n-word, a "bitch", and to be aggressive towards Plaintiff.

36. This client has schizophrenia and repeated whatever Hage told him to say.

37. Thus, the client made false claims that Plaintiff hit him, by Hage telling the client, knowing the client would repeat it.

### PLAINTIFF COMPLAINED ABOUT HAGE'S DISCRIMINATORY CONDUCT

38. Plaintiff complained about this to Kiara Gattis (African American), Manager, and Jamille Borrome (African American), Manager, who then stated that they would report it to Human Resources.

39. Gattis stated a client complained about Plaintiff.

40. However, Defendant did not address Plaintiff's complaint.

### HAGE BEGAN TO HARASS PLAINTIFF FURTHER

41. In or around August 2023, Hage began to aggressively harass Plaintiff.

42. Hage stalked Plaintiff and threatened her.

### PLAINTIFF REPORTED HAGE'S CONDUCT TO MANAGEMENT

43. On one occasion, Plaintiff called Erica Ryals, On-call Manager, and asked them to stay on the phone with her because she felt unsafe and threatened by Hage's behavior.

44. Plaintiff expressed that she was scared Hage would lie about the incident and complain about Plaintiff's instead.

### HAGE FILED A FALSE COMPLAINT THAT PLAINTIFF HAD ABUSED A CLIENT

45. In or around April 2024, Hage falsely told a client's parents that Plaintiff abused the client.

46. This was entirely false.

### DEFENDANT SUSPENDED PLAINTIFF AND FOUND HAGE HAD MADE THE FALSE ALLEGATION

47. As a result of this, Defendant suspended Plaintiff pending investigation for psychological abuse.

48. Two (2) days later, Defendant discovered Hage lied about the situation and sent Plaintiff back to work.

49. Hage was suspended as a result of his false allegations.

50. Eventually, Hage was terminated from Defendant.

### DEFENDANT CONTINUED TO ASSIGN PLAINTIFF TO THE CLIENTS WHO HAGE HAD INSTRUCTED TO MAKE FALSE CLAIMS AGAINST HER

51. Plaintiff continued to care for clients that had been told by Hage to make false claims against Plaintiff.

### DEFENDANT SUSPENDED PLAINTIFF FOR ALLEGEDLY NOT GIVING OUT MEDICATION PROPERLY

52. As a result, in or around early June 2024, Plaintiff was suspended again.

53. Defendant claimed Plaintiff did not give out medication properly.

54. This was false.

55. Plaintiff was only required to administer medication a handful of times per month.

56. Plaintiff detailed this during the investigation.

## MATTHEWS WAS TRANSFERRED TO PLAINTIFF'S LOCATION AND BECAME HER SUPERVISOR AGAIN

57. During her suspension, Matthews was transferred to the Chichester location and became Plaintiff's manager again.

58. Immediately, Plaintiff put in a transfer request to be moved to a new location of Defendant.

## DEFENDANT TERMINATED PLAINTIFF

59. Before her request could be approved, Matthews called Plaintiff and terminated her, less than a month after her transfer to the Chichester location.

60. Matthews claimed Plaintiff made a medication error and falsified documents.

61. Prior to her termination, Plaintiff made Matthews aware of a document and medication error by several African American employees.

62. Specifically, Plaintiff told Matthews that several African American employees were signing their names for employees who were not present and were not administered medication for a week at a time.

63. At the time, Matthews yelled at Plaintiff for the errors and refused to correct the issues.

64. Plaintiff was terminated under the pretext of medication errors she did not commit.

65. Defendant discriminated against Plaintiff due to her race and/or national origin and retaliated against her due to her complaints of race and/or national origin discrimination in violation of Title VII and the PHRA

66. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – RACE DISCRIMINATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

67. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

68. Plaintiff is a member of protected classes in that she is Black.

69. Plaintiff was qualified to perform the job for which she was hired.

70. Plaintiff suffered adverse job actions, including, but not limited to termination.

71. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

72. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

73. Defendant discriminated against Plaintiff on the basis of her protected class.

74. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

75. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

76. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISCRIMINATION BASED ON RACE
### PENNSYLVANIA HUMAN RELATIONS ACT

77. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

78. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff

on the basis of her protected class (Black).

79. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – NATIONAL ORIGIN DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

80. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

81. Plaintiff is a member of protected classes in that her national origin is Liberia.

82. Plaintiff was qualified to perform the job for which she was hired.

83. Plaintiff suffered adverse job actions, including, but not limited to termination.

84. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

85. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

86. Defendant discriminated against Plaintiff on the basis of her protected class.

87. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

88. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

89. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – DISCRIMINATION BASED ON NATIONAL ORIGIN
### PENNSYLVANIA HUMAN RELATIONS ACT

90. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

91. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her national origin (Liberia).

92. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – RETALIATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

93. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

94. Plaintiff engaged in activity protected by Title VII.

95. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

96. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
### PENNSYLVANIA HUMAN RELATIONS ACT

97. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

98. Plaintiff engaged in activity protected by the PHRA.

99. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

100. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Jamesetta Dosii, requests that the Court grant her the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Emotional pain and suffering;

(d) Reasonable attorneys' fees;

(e) Recoverable costs;

(f) Pre and post judgment interest;

(g) An allowance to compensate for negative tax consequences;

(h) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII and the PHRA.

(i) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(j) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual

      reasons cited for its adverse actions, disciplines, and termination; and

(k)    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: October 24, 2025      By:  */s/David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*